THOMAS BAKER ET ALS. v. SCHOOL DISTRICT No. 2 IN BARTON.

*School Districts.*

The defendant district legally voted to build a school-house, and determined in what place it should be located, and chose a committee to superintend the building thereof. Said committee employed the plaintiffs to build the house; and they built it where the committee directed, but not where the district had voted to locate it; although it was near the site of the old school-house, and on land owned by the district. The plaintiffs had no knowledge of the vote locating the house, or that the house was being built in the wrong place; but acted in good faith, under the direction of the committee. *Held,* that the record of said vote was not notice thereof to the plaintiffs, and that the plaintiffs were not bound to inquire, but had a right to presume that the committee were acting within the scope of their authority, and that the ditsrict was liable to the plaintiffs for building the house.

GENERAL ASSUMPSIT. Plea, the general issue. Trial by jury, and verdict for the plaintiffs, September term, 1872, Orleans county, Ross, J., presiding.

It appeared that prior to September, 1867, the school-house in the defendant district was old and out of repair, and that the district, for two or three years, had been agitating the subject of building a new house ; that at a regularly warned meeting, held on the 9th of November, 1866, the district voted to build a new school-house, and elected a building committee, consisting of William Batchelder, Samuel W. Foster, and Frank Farley ; that on the 24th of December, 1866, at a regular meeting of the voters of the district, Lyndon Robinson and Hiram Cass were added to the committee ; that at said last-named meeting, under a proper article in the warning, the district voted to locate the new school-house at a place several rods distant from where the old house stood, and arranged with the owner of the place selected, for an exchange of land, a memorandum of which arrangement was minuted in the book of records of said district, by the clerk, in connection with the proceedings of said meeting ; but the same was not signed by either party. It further appeared that said building committee, for some reason, had not entered upon the erection of said school-house prior to August or September, 1867, farther than to partially complete a plan and specifications for a house ; that in August or September, 1867, a petition, signed by several of the legal voters of said district, was presented to the plaintiffs, who were then selectmen of the town of Barton, asking them to provide a place in said district for holding a school, apparently under the act of 1864 ; that one of the plaintiffs gave verbal notice to the voters of the district, that the plaintiffs would meet them at the school-house, at a specified time, in regard to the matter of said petition ; that the plaintiffs met all, or nearly all, the voters, at the old school-house, in accordance with said notice, and had a pretty full and free conference with them in regard to their respective wishes about a school-house. The plaintiffs' evidence tended to show, that the voters present, with one or two exceptions, admitted that the district needed a new school-house, and expressed a desire

that the plaintiffs would go on and build one, and have it completed ready for use the then ensuing winter; that Lyndon Robinson, in the presence of the other members of the building committee, except one who had removed from the district, told the plaintiffs to go on and build a house, and they should have their pay for it, and said they had been unable to agree, and if they waited for the district, they would never have a house; that Hiram Cass, another of said committee, said substantially the same; that the plaintiffs understood them to be speaking and acting in their official capacity, and that the plaintiffs ever after ceased acting as selectmen, but acted as private individuals under and in compliance with said request and promise of the building committee.

The defendant's evidence tended to show that Robinson and Cass spoke and acted in their individual capacity, and not in their capacity of building committee, and that the plaintiffs in the erection of the school-house, acted in the capacity of selectmen, and not as individuals under an agreement with the building committee acting for the district.

The plaintiff's testimony further tended to show, that they reluctantly consented to go on and build the school-house, at the request, and relying upon said promise of the building committee, and appointed another time when they would meet the voters of the district and the building committee, to settle upon a plan and specifications for the new house. It appeared that the plaintiffs, at the time appointed, again met the building committee, with the exception aforesaid, and nearly all the voters in the district, and that a plan and specifications for a house were then produced by said Cass, and were talked over, and some alterations made therein. Said specifications were used on trial, and were proved to be in the handwriting of the district clerk. It further appeared, that the plaintiffs, together with the clerk of the district and some others, fixed upon a location for the house, and that the plaintiffs went on and erected a school-house on land near the old school-house, and a little farther back from the highway, in substantial compliance with the plan and specications, and had the same completed in the fore part of De-

cember, 1867, and called upon the district to pay for the same, which it refused to do. It further appeared that Lyndon Robinson desired the plaintiffs to look at the place where the district had voted to locate the school-house, and was apparently dissatisfied with the location of the house where it was erected. It was not claimed by the plaintiffs that they made any contract with the district, directly, at either of said meetings, or that the voters of the district were so called together that they could legally bind the district; but they placed their right of recovery solely upon what they claimed their evidence showed to have been the arrangement and agreement entered into with them by the building committee, at said meetings, on behalf of the district. The defendant's evidence tended to show that the place where the plaintiffs erected the new house had been, for more than fifteen years, enclosed in an adjoining cultivated field, the fences of which came down to the old school-house; and claimed that the district did not own the land on which the new house stood. The plaintiffs' testimony tended to show that the district owned one acre of land where the old house stood, and the land on which the new house stood, unless it had lost it by adverse possession. It did not appear that the owner of the lot, to the knowledge of the plaintiffs, made any objection to the location or erection of the new school-house at the place where it was erected.

The plaintiffs, to show the action of the district in electing a building committee, and other matters relating to the new school-house, were allowed, against the defendant's exception, to read from the original book of records of the district. The defendant claimed that the same should have been proved by certified copies of said records. The clerk of the district was a witness, and identified the book as the book of records of said district. The defendant claimed that neither the plaintiffs' nor the defendant's testimony tended to show that the plaintiffs built the house at the request of the building committee, acting as such, and upon their promise that the district would pay for the same. The court ruled otherwise; to which the defendant excepted.

It did not appear that the vote passed on the 24th of December, in regard to the location of the school-house, was revoked

or rescinded, or in any way modified at any subsequent meeting of said district. There was no testimony tending to show that the plaintiffs had any knowledge of this vote; and they, or some of them, denied having such knowledge. The defendant also claimed that the plaintiffs could not recover, because they did not build said school-house on the ground, and in the place, where the district had located the same by said vote. The court did not so charge; but charged as hereafter stated, and told the jury they might consider said fact as bearing upon whether the building committee requested the plaintiffs to build at the place they did, as the plaintiffs claimed.

The court further instructed the jury, that, to entitle the plaintiffs to recover, they must satisfy them by a fair balance of testimony, that they built said house for the district at the request of the building committee, acting in their official capacity, and relying upon their agreement that the district would pay for the same; that it was not necessary that the building committee should severally so request them and agree to pay them, but that if one of said committee, Mr. Robinson, in his official capacity, made such request and promise in the presence of all the others who then resided in said district, and they understood that he was making the request and promise in his official capacity, and did not object to his request and promise to pay, the other building committee would be held to have acquiesced therein, though they said nothing to his request and promise, *pro* or *con*, and the district would be bound thereby, if the plaintiffs acted on said request and promise, and erected the house in compliance therewith.

The court also told the jury, that whether the district owned the land on which the house was erected, or not, was not material further than if they found the district did not own it, they would have a right to consider that fact as bearing upon the question whether the building committee did request the plaintiffs to build the house at that place; but if they found that the building committee, acting as such, did request the plaintiffs to build the house at the place where they built it, and promised to pay them therefor, and the plaintiffs built it in compliance with such request and promise, the defendant would be bound to pay them therefor,

26

whether the house stood on land owned by the district or not. The charge in other respects was such as the case called for, and was not excepted to. The defendant excepted to so much of the charge detailed as relates to the district's being bound by the sayings of one of the committee in the presence of the others, and as to the house being erected upon land not owned by the district, and not being erected where located by the vote of the district.

*Wm. W. Grout,* for the defendant.

The exceptions show that the district, by vote under a proper article, at a meeting legally warned, had located said school-house at a different place from where the plaintiffs built it, and that they had made arrangements for land on which to place it, a memorandum of which was entered upon their book of records, and that that vote had never been rescinded, revoked, or modified at any subsequent meeting of said district. Now, suppose the building committee did contract with the plaintiffs, as the jury seem to have found, that committee had no power to bind the district, if they built a house in a different place than the one fixed upon by the district. Confessedly, the power to locate is in the district. The case shows that it exercised this power; and, having done so, the vote of location was a law unto the committee—they could not disregard it, and bind the district.

The plaintiffs stand no better than the committee would were the suit between them and the district; and who would claim that the committee could recover? The only power they had was to *superintend* the erection of a house at the point where it had been located by the district itself.

The district offered evidence tending to show that the house, though erected near the old school-house, was in fact built upon land not owned by the district. Yet the court told the jury that if they found that the committee requested the plaintiffs to build the house where they did build it, the district would be liable, whether they owned the land or not; thus assuming that the committee had full power from the district, not alone as to *building*, but as to *locating* the house. It is questionable whether a district can legally locate a school-house through a committee. Gen. Sts.

§ 44, ch. 22.    But if so, no such power was conferred in this case. Possibly, after a district had voted to build a new house, and had appointed a building committee, and taken no action to change location, the committee might build on the old site, or in another place on the lot owned by the district, and bind the district; but that is not this case.    This committee was one of limited jurisdiction.    It only had authority to build.    *Harrington* v. *School District*, 30 Vt. 155.*

*Edwards & Dickerman*, for the plaintiffs.

Section 44, ch. 22 of the Gen. Sts. is directory, and does not preclude other modes of locating.    The district could undoubtedly authorize a committee to locate, or adopt such other manner of location as the voters might determine, as indicated in §§ 62, 72, of the same chapter.    The district may adopt a location by ratification, although made in a different manner from that pointed out in § 44.    It may adopt a location by acquiescence.    *Bank of United States* v. *Dandridge*, 12 Wheat. 64.

The objection that the district did not own the land where the house was located, has no force, as it may obtain the land by proceedings *in invitum* for school-house purposes, as pointed out in § 114, ch. 22, of the Gen. Sts.    The building committee were clothed with apparent general powers for building a school-house, and for this purpose they were the agents of the district, and if, while the ground was being staked out at the second informal meeting, there was no objection to the location, and from that time forward to the completion of the house, no objection was made by the district, and the plaintiffs acted in good faith, with no knowledge that the district had voted to locate elsewhere, then the district, by their silence, ratified the acts of their committee, and are estopped by their acquiescence in the doings of the committee.    Story Agency, §§ 95, 96.    Corporations, as principals, stand upon the same ground as individuals, and may adopt the acts of their agents by acquiescence; and school districts have all the powers of a corporation given them by statute.    Angell & Ames Corp. §§ 238, 240, 252, 315.    The same presumptions are

*The other points of exception were not argued.—REPORTER.

applicable to a corporation as to a natural person. Ib. 252. Corporations are liable upon an implied assumpsit, *as well as an express one.* *Stone* v. *Berkshire Congl. Society*, 14 Vt 86 ; *Proprietors of Canal Bridge* v. *Gordon*, 1 Pick. 302. A principal is bound to speak when it is his duty to speak, that third parties may not be defrauded. Story Agency, §§ 90, 91, and note ; 2 Kent, 787, 788, (7th ed.) ; *Trustees Farmington Academy* v. *Allen*, 14 Mass. 172 ; 2 Smith Lead. Cas. 660 (ed. 1855) ; 4 Comst. 303 ; *Brewster* v. *Baker*, 16 Barb. 613 ; *Woodbridge* v. *Proprietors of Addison*, 6 Vt. 204. The committee being clothed with the general authority to build the school-house, third parties had a right to believe that they were clothed with the power to say where the house should be built ; especially, when the house was located on the site of the old one ; and if detriment arises, it must fall upon the party clothing the agent with such apparent authority, rather than upon an innocent party ; and the principal must look to his agent for such injuries as arise in the transaction. Story Agency, §§ 73, 81, 93, 102, 114, 127, 130, 443, 470, and notes ; 2 Kent, 793, 794, note d, 795, 802, note b, 806, note, 807, note 1 ; Angell & Ames Corp. §§ 139, 245, 284, 298, 305 ; *Dunn* v. *St. Andrews Church*, 14 Johns. 118 ; *Alexander* v. *Gibson*, 2 Camp. 555, note a ; *Pickering* v. *Busk*, 15 East, 38 ; *Dyer et al.* v. *Pearson et als.* 3 B. & C. 38.

It is not true, as urged for the defendant, that the plaintiffs have no better position before the court than the committee would have ; because the committee were clothed with apparent authority to do as they did. The committee do not stand in as favorable a position as innocent third parties. Those who created the trust should suffer, if any one, and not innocent parties. 16 Me. 146 ; 21 Ib. 137. From the acts or conduct of agents of corporations, as well as from the acts or conduct of agents of natural persons, implications may be made, either for or against their constituents. *Damon* v. *Granby*, 2 Pick. 345 ; 1 Story Eq. §§ 384 to 394, and note 5 to § 385. Acts done by a corporation which presuppose the existence of other acts to make them legally operative, are presumptive proof of the latter. Angell & Ames Corp. § 284. Hence the appointment of the committee to build the house, gave

the plaintiffs the right to understand that the committee had the right to say where the house should be located. *Munn* v. *Commission Co.* 15 Johns. 44 ; *Rogers* v. *Danby Universalist Society*, 19 Vt. 187. It is a general rule, that the authority of the agent of a corporation may *be implied* from the *recognition* of his acts by the corporation or its directors. The law favors the acts of one in a *reputed* authority. Angell & Ames Corp. § 286.

Corporations can be bound by implication as well as individuals. If a person be employed for a corporation by one who professes to act for it, and renders services under the agreement, with the knowledge of the corporate officers, without notice from them of the employee's want of authority, payment for the services cannot be evaded by the corporation. 12 Wheat. 89.

The opinion of the court was delivered by

BARRETT, J. The evidence tended to show the state of facts which, if found by the jury, the court charged would entitle the plaintiffs to recover. It was found upon the evidence, under the charge, that the plaintiffs built the school-house where they were directed by the building committee ; and the case shows that in every respect, except in the matter of the location, the plaintiffs did everything that was necessary in order to entitle them to be paid by the district for what they had done.

The building committee were the authorized and accredited agents of the district to build a school-house. It is conceded that it was their lawful province to hire the work done in such way and on such reasonable terms of employment as they should see fit. They could personally superintend the erection, themselves procuring materials and hiring workmen by the day or otherwise. They could procure the materials, and let the job of making it into a house. They could contract to have the materials furnished and the house built by the job, for a fixed gross sum, or to have it done *quantum meruit*.

They employed the plaintiffs to do it in the last of said modes. The right of the employees of the committee to be paid for what they should do and furnish, as affected by the matter of the locating of the house, would be the same in each case.

If the committee had personally dug the cellar, and laid the foundation ready for the timber superstructure, and then had procured carpenters to do the work of framing, erecting, and finishing the house, it would seem to be right that such carpenters should have the primary responsibility of the district for their pay, unless it should be shown that they were chargeable with notice that the committee were not authorized to procure that work to be done.   Apparently it would be within the plain and full authority of the committee to thus employ them ; and it would in fact be so, but for the matter of the vote designating the location of the house.

In order to maintain the defence in this case, it would be necessary to hold that workmen thus employed, are chargeable with knowledge of the vote by the fact of the record, and that the committee were acting without authority in employing the workmen to work on the house.   The impropriety of so holding is palpable upon the very statement; and, moreover, it would be in contravention of both the principle and the analogy of decided cases.   The apparent authority is ample to make a valid employment in behalf of the district.   It is warrantable for persons thus employed, to presume that the committee are acting in the exercise of their lawful authority.   They are not called upon to presume or suspect the contrary, and so put to the peril of determining whether they can do the proposed service *for* the district, and on its primary responsibility.   Neither the maxim of *ignorantia legis,* nor of the presumption that every one knows the law, nor as to notice operated by a public record, reaches the case of persons employed by such agents as the building committee in this case.   The plaintiffs should be charged with notice in fact of the unlawful transgression of authority by the committee, in order to avoid their right to recover of the district.   It is not a sufficient answer to say that the plaintiffs may hold the committee for their pay.   The members of the committee may not be pecuniarily responsible.   The plaintiffs, acting innocently, in view of the apparent authority of the committee, are not required to take the hazard of the personal responsibility of the committee. The district has put them forth as its agent to do, or to procure to

be done, the making of a school-house.  As between the district and persons acting innocently upon the apparent authority of the committee, the district ought to, and must, take the responsibility of the validity of such authority.  The case cited of *Harrington* v. *School District*, 30 Vt. 155, is consonant with this view.  In that case, the committee not only had no actual, but no apparent authority to do what they did, viz., to employ counsel in a law suit to which the district was not party nor privy.  In this case, the very and only function of the committee was to build the school-house.  The case cited from 10 Mass. 397, is no more in point than that cited above.

The right of the plaintiffs in this case, does not stand on the ground of *implied* contract ; nor of acquiescence on the part of the district, or of its voters ; but on the proper vigor of the contract made by the committee with the plaintiffs.

It is proper to remark, that there is nothing in the case that shows that the house is not in fact on land owned by the district. It is to be inferred from the manner in which this matter is presented by the exceptions, that it is on such land, unless title had been lost by adverse possession.  Only one element of title lost by adverse possession, was shown by the defendant, viz., that the land had been enclosed in an adjoining cultivated field, the fences of which came down to the old school-house.  This comes far short of showing that the district did not own the land.  But this point is not material, as the case was put to the jury.  There was nothing in the location and lay of the land, to indicate that it did not belong to the district, or that the house was not properly located, and rightfully to be built there.  We have not deemed it important to comment on the authorities cited by counsel for plaintiffs, in the view upon which the case is decided.

Judgment affirmed.